Sam J. HIRE

v.

**E. I. DUPONT DE NEMOURS & CO.,
Incorporated.**

**Civ. No. 3131.**

United States District Court
M. D. Tennessee,
Nashville Division.

Dec. 5, 1962.

Kenneth Harwell, U. S. Atty., Joseph L. Lackey, Jr., Asst. U. S. Atty., John D. Black, U. S. Dept. of Labor, Nashville, Tenn., for plaintiff.

Charles L. Cornelius, Nashville, Tenn., W. B. DeRiemer, Legal Department, E. I. du Pont de Nemours & Co., Incorporated, Wilmington, Del., for defendant.

GRAY, District Judge.

The material stipulated facts on which both parties have submitted motions for summary judgment are these:

The plaintiff was employed by the defendant continuously from November 1, 1945, to July 2, 1954, when he left to enter military service. While he was in the service, the company and the bargaining agent for its employees entered into an agreement providing for the first time for severance pay for employees laid off for lack of work, and employees of the plaintiff's seniority were laid off and granted severance pay under the agreement. The plaintiff was released from the military service July 28, 1958, applied for reinstatement with the defendant July 31, 1958, and was placed on the company's recall list of laid-off employees in accordance with his rightful seniority. On August 18, 1958, the plaintiff applied for severance pay under the labor agreement, and the company refused the application August 26, 1958. This action was filed October 9, 1961, to recover the severance pay allegedly due him under the Universal Military Training and Service Act, § 9, 62 Stat. 604, at 614–18, as amended, 50 U.S.C.Appendix § 459 (1958 Ed.).

Preliminary problems are presented by an omission and an apparent conflict in the stipulation. Paragraph III of the stipulation implies that the plaintiff entered the service immediately upon leaving his employment July 2, 1954. This suggests the plaintiff was in the service four years and twenty-six days. The plaintiff's re-employment rights under Section 9(g) of the Act are limited to a period not exceeding four years of voluntary service, and there is no mention in the record of any compulsory service qualifying him under either this section or Section 9(b). However, the defendant has made no objection on this score, and counsel for the plaintiff has satisfied the court that the plaintiff's actual period of military service began on July 29, 1954. The court will therefore assume, as the parties have, that the plaintiff is entitled to the benefits of the Act.

Paragraph V of the stipulation says:

"That because of the Labor Agreement in force, defendant could not restore complainant to a position of like seniority, status and pay, but, in accordance with said Labor Agreement, could only place him on the recall list for recall to duty when production increased sufficiently. Complainant's position on the recall list was in conformity with his rightful seniority status, under the Labor Agreement."

The first sentence is inconsistent with the last, in that placement of a returning veteran on a recall list in accordance with his rightful seniority status under these circumstances constitutes restoration to a "position." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). It must be assumed then that the parties intended to say only that the plaintiff could not be restored to active employment in his former position, which is obviously the truth of the matter.

██ Another question that must be considered before turning to the merits is the defendant's plea that the action is barred by Tennessee's three-year statute of limitations, 28 T.C.A. § 305, which provides:

"Actions for injuries to personal or real property, actions for the detention or conversion of personal prop-

erty, civil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability, and actions for alienation of affections, shall be commenced within three (3) years from the accruing of the cause of action."

Neither party has cited any case in close enough point to be helpful, and the court has found none. The liability asserted in this case is for severance pay. It would require a stretch of the ordinary meaning of language to include liability for severance pay as a monetary liability for personal services rendered. Furthermore, if there is such a liability in this case, it is not a liability *created* by the statute. The statute *creates* only re-employment rights. Liabilities that may result from an exercise or recognition of the re-employment rights are created by the particular employment relationship involved. These do not fall within the language of this statute as ordinarily understood, and where there is doubt which of two statutes of limitations should apply, the longer one, in this case 28 T.C.A. § 310, should be preferred. Payne v. Ostrus, 50 F.2d 1039, 1042, 77 A.L.R. 531 (8th Cir. 1931). This action is not barred by the statute set up by the defendant.

The determinative question on the merits is whether a veteran is entitled under the Act to layoff benefits created by a labor agreement negotiated during his military service when he is placed on layoff status immediately upon returning from the service without an intervening period of active employment.

Section 9(c) of the statute provides, in pertinent part:

"(1) Any person who is *restored to a position* in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] * * * shall be entitled to partici-

pate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer *at the time such person was inducted into such forces* * * *." [emphasis supplied].

The defendant concedes that this provision does not deprive the returning veteran of the benefits of interim collective bargaining agreements or excuse him from their non-discriminatory disadvantages. Alvado v. General Motors Corp., 229 F.2d 408 (2nd Cir. 1956); Brown v. Denver Post, Inc., 145 F.Supp. 351 (D.Colo.1956). But it contends that this principle does not apply until the veteran returns to active employment, because until then he is not "restored to a position" within the meaning of the statute. This contention is sufficiently answered by reference to the Fishgold case, supra. There the Supreme Court said, 328 U.S. at 288, 66 S.Ct. at 1112:

"Moreover, a veteran on his return is entitled to his old 'position' or its equivalent even though at the time of his application the plant is closed down, say for retooling, and no work is available, unless of course the private employer's 'circumstances have so changed as to make it impossible or unreasonable' to restore him. § 8(b) (B) [now § 9(b) (B)]. He is entitled to be recalled to work in accordance with his seniority. His 'position' exists though no work is then available. The slackening of work which causes him to be laid off by operation of a seniority system is neither a removal or dismissal or discharge from the 'position' in any normal sense."

The plaintiff was "restored" by being placed in his proper position on the recall list. He is therefore entitled to the benefits of Section 9(c). But then the defendant says, in apparent contradiction to its concession about interim benefits, that there was no provision for severance pay at the time he entered

service and therefore no "rules and practices" relating thereto. In the absence of evidence of rules and practices as to analogous benefits, the court must assume that such as there were would not aid the defendant's contention. Otherwise, the defendant, having peculiar access to such evidence, would have sought to introduce it instead of filing a motion for summary judgment.

This brings the inquiry down to the interpretation of the language of the contract creating the severance pay benefit. The agreement provided, in pertinent part:

"Section 1. An employee who has one (1) year or more of service shall be paid severance pay each time he is terminated because of lack of work. * * *"

It is immediately apparent that this plaintiff, unlike the veterans in Dwyer v. Crosby Co., 167 F.2d 567 (2nd Cir. 1948), and Seattle Star v. Randolph, 168 F.2d 274 (9th Cir. 1948), had fully met all the stated qualifications before entering the service without credit for his military time. Thus the question is narrowed to the meaning of the word "terminated" in the contract.

Obviously "terminated" does not mean permanent discharge. If it did, the phrase "each time" would have been meaningless. And the stipulated facts show that the employees who received severance pay during the plaintiff's absence in the military service were placed on the recall list. It follows that this plaintiff was terminated, within the meaning of the agreement, at some time between his period of active employment before his military service and his placement on the recall list on his return. If it was at the time he left to enter the service, then it must be assumed that employees leaving the company for military service since adoption of the severance pay agreement have been entitled to severance pay under the agreement. If such a practice exists, surely the company would have seen that it was brought to the attention of the court. On the other hand, if he was not terminated within the meaning of the agreement at the time his military leave began, then he must have been terminated while on leave or upon his return from military service. All dates in this record that might be taken as a termination date, other than his departure for military service, fall in the period subsequent to adoption of the severance pay agreement in 1956.

Since he was an employee, Kelly v. Ford Instrument Co., Div. of Sperry Rand Corp., 298 F.2d 399 (2nd Cir. 1962), and had a year's active service with the company without counting his military service time, he was qualified to receive the severance pay under the contract from the time it was adopted. The conclusion is unavoidable that he was terminated within the meaning of the agreement after the agreement was adopted, and he is entitled to recover accordingly in order to be returned to the full benefits of the position guaranteed to him by Congress.

The plaintiff's motion will therefore be granted and the defendant's motion denied.

Counsel will submit an order directing entry of an appropriate judgment within seven (7) days. If there is disagreement on the form of the order, each party will submit its proposal within that time.