MARCELLA PAASCH, APPELLANT AND CROSS-APPELLEE, V. JULIA BROWN, APPELLEE AND CROSS-APPELLANT.

260 N. W. 2d 612

Filed December 28, 1977. No. 41264.

H. E. Hunt, Jr., and James A. Gallant, for appellant.

McGrath, North, O'Malley, Kratz, Dwyer, O'Leary & Martin, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

WHITE, C. J.

This case involves a continuing controversy between the plaintiff, an upper landowner, and the defendant, a lower landowner, over the obstruction by the defendant of the flow of surface waters from the plaintiff's land through a natural drainway.

In the first appearance of this controversy before this court, Paasch v. Brown, 190 Neb. 421, 208 N. W. 2d 695 (1973), the plaintiff brought suit seeking damages and injunctive relief. In that case, we held as follows: "We find defendant obstructed surface water that ran in the equivalent of a natural drainage channel from plaintiff's 'long 40.' Plaintiff is accordingly entitled to an order of injunction."

The case was remanded to the District Court for Dodge County, Nebraska, for it to make findings or grant a new trial on the issue of damages and to proceed in accordance with the court's opinion.

On July 23, 1973, this court issued its mandate to the District Court. On August 23, 1973, the plaintiff filed a motion with the District Court requesting that judgment be entered on the mandate. On October 10, 1973, the District Court entered judgment on the mandate as follows: "It is the further order of this Court that the defendant, her agents, servants and employees be and they are hereby permanently enjoined from permitting any obstruction in the drainage by which surface water drains from real property owned by plaintiff * * *."

The plaintiff thereafter filed an action in tort for outrageous conduct, seeking damages for mental distress allegedly caused her by the defendant's refusal to comply with the above judgment of the District Court. In the second appearance of this contro-

versy before this court, Paasch v. Brown, 193 Neb. 368, 227 N. W. 2d 402 (1975), this court upheld the sustaining of a demurrer to and the dismissing of the plaintiff's petition by the District Court. We held: "The facts alleged here, with the benefit of all proper and reasonable inferences from them, are insufficient to constitute a cause of action for outrageous conduct intentionally causing severe emotional distress."

On August 29, 1975, the plaintiff filed a motion and affidavits in support thereof with the District Court for the defendant to show cause why she should not be held in contempt of court for failure to comply with the October 10, 1973, judgment of the District Court. The same day a citation to show cause was issued to the defendant by the District Court. A hearing on the matter was held on September 30, 1975, after which the District Court sustained the defendant's motion to dismiss the action filed by the plaintiff. On October 8, 1975, the plaintiff filed a motion for a new trial. The record is silent as to the disposition of this motion and of any attempts by the plaintiff to appeal from the September 30th decision.

On June 30, 1976, a second motion to issue a citation and affidavits in support thereof were filed by the plaintiff with the District Court. A citation to show cause was issued on the same date to the defendant by the court. A hearing on the matter was held on August 4, 1976. On October 26, 1976, the District Court, having heard the evidence and having viewed the premises, found that the defendant was not in contempt and ordered the citation to show cause be dismissed. This controversy makes its third appearance before this court. We affirm the judgment of the District Court.

The sole issue before us on this appeal, and we emphasize this at the outset of our discussion, is the correctness of the District Court's finding that the defendant was not in contempt. We have, on this

appeal, neither the jurisdiction nor the evidence properly or fully presented, nor do we attempt in any way to reach the underlying substantive issues of this dispute.

The power to punish for contempt of court is a power inherent in all courts of general jurisdiction such as the District Court of this state. State ex rel. Beck v. Frontier Airlines, Inc., 174 Neb. 172, 116 N. W. 2d 281 (1962). The power to punish for contempt is incident to every judicial tribunal, derived from its very Constitution, without any express statutory aid. Nebraska Children's Home Society v. State, 57 Neb. 765, 78 N. W. 267 (1899). "By statute courts of record have power to punish as for criminal contempt persons guilty of willful disobedience of or resistance willfully offered to any lawful process or order of the court * * *." Payne v. Glebe, 190 Neb. 268, 207 N. W. 2d 386 (1973). Section 25-2121, R. R. S. 1943, specifically provides: "Every court of record shall have power to punish by fine and imprisonment, or by either, as for criminal contempt, persons guilty of * * * (3) *willful* disobedience of or resistance *willfully* offered to any lawful process or order of said court." (Emphasis supplied.)

"A civil contempt has for its purpose the preservation and enforcement of the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce private rights to which the court has found them to be entitled." McFarland v. State, 165 Neb. 487, 86 N. W. 2d 182 (1957).

"Where a party to an action fails to obey an order of the court, made for the benefit of the opposing party, the rule is well recognized that such act is, ordinarily, a civil contempt." McFarland v. State, *supra*.

As contempt proceedings are in their nature criminal, no intendments or presumptions will be indulged in to support a conviction. Halverson v. Halverson, 189 Neb. 489, 203 N. W. 2d 452 (1973). See,

also, Crites v. State, 74 Neb. 687, 105 N. W. 469 (1905).

In a civil contempt proceeding willfulness is an essential element. Village of Springfield v. Hevelone, 195 Neb. 37, 236 N. W. 2d 811 (1975); Megel v. City of Papillion, 190 Neb. 238, 207 N. W. 2d 377, cert. den. 415 U. S. 919, 94 S. Ct. 1419, 39 L. Ed. 2d 474, appeal after remand, 194 Neb. 819, 235 N. W. 2d 876 (1973). The disobedience of an injunction must be willful before the breach thereof may be punished as a contempt. Kasparek v. May, 174 Neb. 732, 119 N. W. 2d 512 (1963). It is necessary to establish guilt beyond a reasonable doubt. Whipple v. Nelson, 138 Neb. 514, 293 N. W. 382 (1940).

In order for the defendant to be found in contempt, the District Court had to conclude that the defendant had violated its order, and that her disobedience was willful. The District Court did not, in its order, specify the grounds upon which it concluded that the defendant was not in contempt. The District Court could have concluded either that the defendant had satisfactorily complied with its order or that the defendant's violation of its order was not willful.

What did the order require? Plaintiff's position is that the flow of surface waters from her land is obstructed by the following in the drainway: (1) A 15-inch diameter metal tube or culvert; (2) fill dirt around the culvert; (3) two small cottonwood trees growing near the culvert; and (4) general brush and debris. She is adamant in her position that removal of all these is required if the court's order is to be complied with.

Our original decision contained a general finding of fact that the defendant had obstructed the flow of surface waters from the plaintiff's land in the drainway, and held that the plaintiff was entitled to an injunction. In our recital of facts in that case, sole reference was made to the 15-inch diameter metal tube or culvert. No mention was made of fill dirt,

cottonwood trees, debris, or any other specific item which could constitute an obstruction to the flow of the surface waters.

The case was remanded for "further proceedings in accordance with this opinion." Paasch v. Brown, 190 Neb. at 425. Pursuant to our mandate, the District Court entered its judgment enjoining the defendant "from permitting any obstruction in the drainage by which surface water drains from real property owned by plaintiff." The District Court's judgment also does not mandate the removal of any specific items. We note that the record is devoid of a motion by either party to have this decree modified or made more specific.

"In a contempt proceeding for disobedience of an order, language of duty in the order is not expandable beyond a reasonable interpretation in light of the purposes for which the order was entered." Malec v. Malec, 196 Neb. 533, 244 N. W. 2d 82 (1976). See, also, Drake v. Drake, 183 Neb. 677, 163 N. W. 2d 598 (1968).

It seems clear to us that the purpose of the original decree was to prevent the obstruction of the flow, as existed at the time of the decree, of surface waters from plaintiff's land in the natural drainway. The defendant is thus required to do whatever is necessary in order to accomplish that purpose. If the flow, as it existed at the time of the decree, is not being obstructed, then the defendant is not violating the order.

At the hearing on September 30, 1975, Wilbur Paasch, plaintiff's husband, testified that on May 18, 1974, there was a heavy rain and that the Paasch land was under water. This was the only specific date after issuance of the mandate that he could recall there being water on the property. Exhibits 9, 10, and 11 were photographs introduced into evidence showing the Paasch property under water after the May 18th rain. He testified that these photo-

graphs showed only the Paasch property. Paasch testified that grain, straw, and things up against the two cottonwood trees in the ditch tended to slow and hold back the water. He stated that the cottonwood trees held back the flow of water.

At the August 4, 1976, hearing, the defendant, Julia Brown, testified that she removed the metal culvert in the drainway directly after receiving correspondence from her attorney advising her to do so. The record shows that the culvert was removed in January of 1974. She testified that she always kept the ditch in question clean. She stated that there was no obstruction at the point of the cottonwood trees and that there is more drainage at the point of the cottonwood trees than directly east from there. Mrs. Brown testified that there was never any obstruction preventing the flow of waters at the point in controversy after the culvert was removed. She testified that there was nothing in the ditch from where it starts at the Paasch property eastward across the property that would in any way impede or retard or change the direction of the flow of water.

Ed Rasmus testified that he was contacted in the fall of 1973 by the defendant to remove a culvert on her property. He testified that Mrs. Brown had a letter from her attorney which requested that she remove obstructions from the drainage ditch and that he followed the instructions as set forth in the letter.

Roger Vacha, the defendant's tenant, testified that at the time of the heavy rainfall in the spring of 1974, there was no obstruction in the ditch at the point of the cottonwood trees. He stated that since he has been associated with the defendant's land, the ditch around the cottonwood trees has not in any way impeded or retarded or changed the flow of water. He testified that in the spring of 1974, the Brown property was also under water. Mr. Vacha testified that he always tried to keep the drainage ditch clean and that he keeps debris out of the ditch around the cot-

tonwood trees. Vacha testified that he observed drainage from the Paasch property onto the Brown property twice after heavy rainfalls and observed no evidence of back-up of any water or of debris collecting.

There was evidence that the defendant had on her property, near the disputed site, equipment which could have removed the cottonwood trees and fill dirt in April of 1976.

Much of the evidence before the District Court was conflicting and contradictory in nature. The trial court had the opportunity to view the parties and the witnesses. This court will consider the fact that the trial court saw and heard the witnesses and observed their demeanor, and will give great weight to the trial court's judgment as to credibility. Donahoo v. Home of the Good Shepherd of Omaha, Inc., 193 Neb. 586, 228 N. W. 2d 287 (1975). On August 9, 1976, the trial court personally inspected the area in question. This court will give consideration to the fact that the trial court inspected the premises. Steffen v. County of Cuming, 195 Neb. 442, 238 N. W. 2d 890 (1976).

There was sufficient evidence for the trial court to have concluded that the flow of surface waters, as existed at the time of the original decree, was not being obstructed and that defendant was thus in compliance with the order; or that if such was not the case, that defendant's noncompliance with the order was not willful. Where a case is tried to the court, without a jury, the finding of the trial court will be given the same weight as a jury verdict and will not be disturbed on appeal unless clearly wrong. Crane Co. v. Roberts Supply Co., 196 Neb. 67, 241 N. W. 2d 516 (1976).

The judgment of the District Court is correct and is affirmed.

AFFIRMED.